# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LATISHA MARBUARY, O.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:16-cv-01330-JEO |
| | ) |
| WAL-MART STORES EAST, LP, | ) |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

Plaintiff Latisha Marbuary has sued defendant Wal-Mart Stores East, LP ("Wal-Mart") alleging discrimination because of race, in violation of 42 U.S.C. § 1981. (Doc. 1).[1] The cause now comes to be heard on Wal-Mart's motion for summary judgment. (Doc. 19). The issues have been fully briefed and are now ripe for review. (Docs. 20, 24 & 25). For the reasons below, the Court finds that Wal-Mart's motion for summary judgment is due to be granted.

### I.   Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is authorized to move for summary judgment on claim asserted against it. Under that

---

[1] References to "Doc. ___" are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of the Court.

rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1)(A), (B). In its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II. Facts

Marbuary is a licensed optometrist in the State of Alabama. (Pl. Dep. at 14).[2] She owns a company called 20/20 Vision Works, LLC. (Pl. Dep. at 25). Wal-Mart is a retailer operating multiple store locations in the State of Alabama. (Billy W. Lawley, II Decl. at ¶ 3).[3] Some of these locations include Vision Centers, which lease space and services to licensed optometrists rather than employing optometrists to see patients. (*Id.*)

Wal-Mart entered into a License and Optional Services Agreement with Dr. Neal Irwin, an optometrist, to practice at the Vision Center in Store #1229 in Hoover, Alabama, beginning on September 1, 2012. (Pl. Ex. 3;[4] Lawley Dep. at. 38-40). Before the contract began, Marbuary, through her company, 20/20 Vision Works purchased Irwin's practice. (Pl. Dep. at 38-39; Pl. Ex. 3). Marbuary entered into an Assignment and Assumption Agreement under which Irwin transferred the Wal-Mart contract to her. (Pl. Ex. 3 at 74 of 78). The terms of the original contract transferred to Marbuary, including (1) a September 1, 2015

---

[2] Marbuary's deposition is located at document 21-1 in the record. Pinpoint citations for depositions are to page of the transcript.

[3] Lawley's declaration is located at document 21-3.

[4] Marbuary's exhibits are located at document 21-2, as attachments to Lawely's deposition.

expiration date (2) and the list of dates and hours Marbuary would be required to be at Store # 1229 or provide a licensed optometrist to cover for her. (Pl. Dep. at 47-49).

Marbuary also had a separate License and Optional Services Agreement with Wal-Mart Store # 2723 in Sumiton, Alabama for 2013-2014. (Pl. Dep. at 34). The contract similarly required Marbuary to either be present at the store or have a licensed optometrist present on specified days of the week, some of which overlapped with Store # 1229. (Lawley Decl. at ¶ 4; Pl. Dep. at 34). Under Article 6 of the License and Optional Services contract, Walmart had the right to terminate Marbuary's contract for: "(a) Doctor's failure to abide by any of the covenants, terms and conditions herein shall constitute a default." (Pl. Dep. at 7-8).

In December 2014, Marbuary asked Walmart Market Health and Wellness Manager Billy Lawley, her primary Walmart contact, to assist her in amending the terms of her contract with Store #1229, including a reduction in her contracted hours from six days per week to four days per week. (Pl. Dep. at 44-46). Lawley worked with Marbuary to make this and other requested changes happen. (Lawley Dep. at 65-66; Pl. Dep. at 44-46, 52-53).

Lawley had conversations with Marbuary about the need to provide optometrist coverage at both the Sumiton and Hoover locations pursuant to

her contracts, as there were occasions when Marbuary would cancel her scheduled time at one Vision Center in order to cover the other, busier Vision Center (without providing an optometrist to cover the less-busy store). (Lawley Dep. at 45-49). Ultimately, Marbuary voluntarily terminated her Sumiton contract because "[she] just couldn't do both. [She] couldn't be at two places at one time." (Pl. Dep. at 35).

Wal-Mart employs a Vision Center Manager to oversee operations of the Vision Centers. (Nataness Averhart Decl. at 2;[5] Lawley Decl. p. 7). In his role as Market Health and Wellness Manager, Lawley checks in with the Vision Center Manager at each location to ensure operations are running smoothly and to inquire about the services each optometrist is providing. (Lawley Decl. at 7). During the course of Marbuary's contract with Store #1229, Hoover Vision Center Manager Nataness ("Nat") Averhart noticed that Marbuary was not fulfilling her contractual obligations to either be present or have another optometrist present during her contracted office hours. (Averhart Decl. at 5). Consequently, Averhart made multiple reports to Lawley that Marbuary either failed to appear for her scheduled hours or did not work the posted hours, *i.e.*, she arrived late and/or left early. (Lawley Decl. at 7; Averhart Decl. at 4-7). According to Averhart, Marbuary's frequent absences during posted doctors'

---

[5] Averhart's declaration is located at document 21-4 in the record.

hours (a) resulted in disappointed customers who were unable to see an optometrist, and (b) lowered the Vision Center's revenue potential. (Averhart Decl. at 3, 5). However, Lawley never noticed any glaring problems with Marbuary's performance and did not receive any customer complaints about her. (Lawley Dep. at 43).

On one occasion, Marbuary called Averhart to report she was sick and would not be at the Vision Center. (Averhart Decl. p. 4). Upon learning from Averhart that Marbuary would not be present (and, thus, the Hoover location could not see patients), Lawley asked Averhart to travel to the Sumiton Vision Center, which was short-staffed that day. (Lawley Dep. at 45-49; Averhart Decl. at 4). When Averhart arrived in Sumiton, Averhart found Marbuary there, seeing patients, rather than home sick as she had represented to Averhart. (Averhart Dec. at 4).

On another occasion, May 28, 2015, Marbuary informed Averhart she would not be at Store #1229. (Averhart Decl. p. 4). Several days later, a doctor from a Target store that also provided optometrist services called Averhart looking for Marbuary, asking if Marbuary could fill-in for the doctor again, as Marbuary had done on May 28, 2015. (*Id.*) On May 28, 2015, when Marbuary filled-in for the Target optometrist, she was contractually bound to provide optometric services at Walmart Store #1229. (*Id.*) Averhart kept Lawley

apprised of Marbuary's repeated violations of her Walmart contract. (Averhart Decl. at 4-5). Averhart emailed Lawley the dates which Marbuary either did not come to Store #1229 or was late/left early. (Lawley Ex. 5; Averhart Decl. at 7, Ex. A). Averhart stated that Marbuary did not fulfill the days/hours of her contract on the following dates: February 28, 2014; March 24, 2014; April 8, 2014; April 22, 2014; April 25, 2014; May 17, 2014; May 20, 2014; May 21, 2014; May, 27, 2014; June 3, 2014; June 26, 2014; June 27, 2014; June 30, 2014; July 12, 2014; August 19, 20114; September 27, 2014; October 18, 2014; November 26-29, 2014; February 21, 2015; May 15, 2015; May 16, 2015; May 18, 2015; May 28, 2015; July 10-2015; and July 11, 2015, a total of 28 times over the course of eighteen (18) months during 2014 and 2015. (Lawley Ex. 5; Averhart Decl. at 7, Ex. A (Doc. 21-4 at 7 of 8)).

Lawley testified that he decided not to renew Marbuary's contract upon its expiration in September 2015 based on her inability to comply with the terms of the contract and her failure to appear or provide coverage, which would tend to result in frustrated customers, a frustrated Vision Center Manager, and potential loss of revenue. (Lawley Dep. at 59-65; Lawley Decl. at ¶¶ 8-9). In doing so, Lawley says he relied on Averhart's observations of Marbuary's contract failures, as well as his personal observations of Marbuary's absences. (*Id.*) Lawley's office is located within Store # 1229, the same store where Marbuary

was the contract optometrist, so he also was aware of a number of occasions when Marbuary was contracted to be in the Vision Center but was not there.[6] (Pl. Dep. at 62; Lawley Dep. at 42; Lawley Decl. at ¶ 9).

Following the expiration of Marbuary's contract, Walmart contract with Dr. Victor LaCour, who is Caucasian, to provide optometric services at the Hoover location. At the time, Dr. LaCour had another Walmart Vision Center contract at another location. (Lawley Dep. at 80-82). LaCour left Wal-Mart, however, sometime after Averhart told Lawley that LaCour was not fulfilling his contract. (Lawley Dep. at 80-82; Lawley Decl. at ¶ 10).

Marbuary testified that other optometrists with Walmart contracts did not provide full coverage under them either. However, she was unable to identify any optometrist of any race whose coverage issues were similar or worse than hers, but whose contract was renewed or not terminated. (Pl. Dep. at 77-78, 80-81). Despite her contract requirement that she either be present personally or "have a doctor filling in or a doctor to cover those hours," Marbuary admits there were times when she did not have a doctor cover for her in her absence. (Pl. Dep. at 49). Marbuary also testified that she has no evidence that Walmart's decision was based on her race but that she assumes the decision was race-based

---

[6] At one point in his deposition, Lawley states that he did not have any knowledge of Marbuary not providing coverage. Instead, it came from Ms. Averhart. (Lawley Dep. at 60).

because "[t]here's no other reason why it shouldn't have been renewed." (Pl. Dep. at 82-84).

After she learned her contract with Store # 1229 would not be renewed, Marbuary contacted Dr. Chad Overman, an optometrist liaison at Walmart's home office in Bentonville, Arkansas. (Pl. Dep. at 84; Lawley Dep. at 66). Marbuary asked Overman why her contract was not renewed, and he explained "that it was said that I was not working my hours." (Pl. Depo. at 84-85). Marbuary did not tell Overman she felt the non-renewal of her contract was premised on discrimination. (*Id.*)

### III. Analysis

Wal-Mart argues both that Marbuary has not established a prima facie case because she has not identified a similarly situated comparator and that Marbuary has not brought forth sufficient evidence to show that Wal-Mart's reason for not renewing her contract was pretext for racial discrimination. (Doc. 20 at 9-11). In response, Marbuary argues that (1) she has identified similarly situated comparators; (2) even if she has not established a prima facie case, her case must go forward because she has demonstrated evidence creating a triable issue concerning Wal-Mart's discriminatory intent; and (3) that a reasonable juror could conclude that Wal-Mart's reason is pretext for discrimination. (Doc. 24 at 9-14).

"Race discrimination claims under 42 U.S.C. § 1981 are subject to the same analytical framework as disparate treatment claims under Title VII." *Peters v. HealthSouth of Dothan, Inc.*, 542 F. App'x 782, 786, n. 4 (11th Cir. 2013).[7] This analytical framework, first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), includes a burden-shifting approach under which it is Marbuary's responsibility first to prove a prima facie case before the burden shifts to Wal-Mart to show a legitimate and non-discriminatory reason for not renewing Marbuary's contract. *See id.* at 802. After Wal-Mart has offered such a reason, Marbuary must show that the reason is merely pretext for discrimination. *Id.* at 802-04. Thus, even if Marbuary could establish a prima facie case, Wal-Mart is entitled to judgment as a matter of law if Wal-Mart offers a legitimate, non-discriminatory reason for its actions and Marbuary fails to introduce "significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted).

For the sake argument, the Court will assume Marbuary has demonstrated a prima facie case and will proceed to an analysis of Wal-Mart's justification for its actions. Wal-Mart asserts that Marbuary's "repeated and admitted failure to provide coverage" for the Hoover, Alabama location was a legitimate and non-discriminatory reason for not renewing Marbuary's contract. (Doc. 20 at 11).

---

[7] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

Wal-Mart points the Court to evidence in the record of Marbuary's continuous violation of her contract. Wal-Mart's Vision Center Manager, Nat Averhart, observed Marbuary's failure to provide Vision Center coverage on at least 28 occasions in the last 18 months of Marbuary's contract. (Lawley Ex. 5; Averhart at ¶ 7, Ex. A). Averhart made multiple reports to Lawley that Marbuary either failed to appear or did not work the posted hours. (Lawley Decl. at 5, Averhart Decl. at 4).

On one occasion, Marbuary was found working at another Vision Center after calling in sick to the Hoover Vision Center. (Averhart Decl. at 4). On another occasion, Marbuary informed Averhart she would not be working at the Hoover location on May 28, 2015. Averhart then received a call from a Target doctor several days later to ask if Marbuary could fill in for her as she had on May 28, 2015. (*Id.*) Marbuary's repeated failure to comply with the requirements of her contract is clearly a legitimate, non-discriminatory reason for refusing to renew that contract.

In response, Marbuary contends that Wal-Mart's reasoning is pretext for discrimination because (1) she was never made aware of any performance deficiencies until after her contract was not renewed; (2) Wal-Mart had the right to terminate her contract for a breach but did not; (3) Wal-Mart did not receive customer complaints about Marbuary's lack of service; (4) Wal-Mart renewed the

11

contracts of white people who also had coverage issues; and (5) the letter indicating her contract would not be renewed did not mention performance issues as the basis for the decision. (Doc. 24 at 1-2). Marbuary thus argues that the evidence as a whole would permit a reasonable juror to conclude that Wal-Mart's reasoning was pre-textual in nature. (*Id*. at 15).

"To avoid summary judgment, [Marbuary] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark*, 990 F.2d at 1228 (citation omitted). "A prima facie case plus evidence permitting disbelief of the employer's proffered reasons equals the plaintiff's entitlement to have the fact finder decide the ultimate issue of discrimination." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1531 (11th Cir. 1997).

Even when viewing the record in the light most favorable to Marbuary, there is no evidence that Wal-Mart's reason was pre-textual in nature. While Marbuary asserts she was never made aware of any performance deficiencies until Wal-Mart's decision was made, Wal-Mart was not under a duty to discuss with Marbuary any performance deficiencies either during the course of the contract or before renewing or cancelling the contract. Further, while Wal-Mart did have the right to terminate her contract for a breach and did not to do so, Wal-Mart also had the right to keep their contract with Marbuary for the full length of the contract and

refuse to renew it. Simply showing that Wal-Mart did something within their rights under the contract that had a negative impact on Marbuary is not enough to show pretext.

Marbuary also argues that the fact that Wal-Mart never received customer complaints about Marbuary goes towards showing that Wal-Mart had discriminatory intent in refusing to renew her contract. While the existence of such customer complaints would admittedly tend to support a decision by Wal-Mart not to renew Marbuary's contract, a lack of customer complaints alone does not show racially discriminatory intent or that Wal-Mart is not giving an honest account of its behavior, particularly given that Marbuary largely admits to having engaged in the misconduct that Wal-Mart cites. This argument is without merit.

Marbuary next asserts that the letter indicating Wal-Mart would not be renewing her contract, which fails to state a reason for the decision not to renew her contract is evidence demonstrating that Wal-Mart's reason is pretextual. However, Wal-Mart was not required to explain the factors impacting its decision in not renewing the contract, so that silence itself cannot support an inference that Wal-Mart's true reason was race. Therefore, this argument is also without merit.

Finally, Marbuary argues that Wal-Mart renewed the contracts of similarly situated white doctors who also had coverage issues and therefore Wal-Mart's reason for refusing to renew her contract must have been discriminatory. To be

considered a similarly situated comparator, Marbuary and the comparator must be similarly situated "in all relevant aspects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citation omitted). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Id*. (citation omitted).

In her deposition, Marbuary asserts that Drs. Neal, Pettie, LaRussa, Carter, and Box, all of whom are Caucasian, had coverage issues, yet Wal-Mart renewed their contracts. (Pl. Dep. at 74-81). However, there is no evidence in the record indicating the specific coverage issues and the frequency of the same. In this case, Marbuary failed to provide coverage 28 times over the course of 18 months. This evidence is undisputed. The essence of Marbuary's situation is not just a failure to provide coverage by coming to work, but the frequency of the same. To establish a similarly situated comparator, Marbuary must show Wal-Mart renewed the contract of a person outside of Marbuary's protected class that had attendance issues with a similar frequency or seriousness to Marbuary. Because there is no evidence in the record to support that conclusion, Marbuary cannot establish a similarly situated comparator. As a result, Marbuary cannot prove that Wal-Mart's reasoning was pre-textual and Wal-Mart is therefore entitled to judgment as a matter of law.

To the extent that Marbuary argues that she need not show a comparator because the record contains enough non-comparator evidence of discrimination for a jury to reasonably infer that the decision was discriminatory (doc. 24 at 11-12), the Court is not impressed. While there are times that the facts "present[] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker," this is not one of those cases. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Marbuary simply has not pointed to "any evidence of racially discriminatory intent or animus on the part of the decisionmaker." *Smitherman v. Decatur Plastics*, No. 4:15-c-01576-JEO, *62017 WL 3668176, (N.D. Ala. Aug. 24, 2017).

## IV. Conclusion

Wal-Mart has established that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Therefore, Wal-Mart's motion for summary judgment (doc. 19) is due to be granted. An appropriate order will be entered.

**DATED,** this 21st day of November, 2017.

_John E. Ott_
**JOHN E. OTT**
Chief United States Magistrate Judge